# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Kirby Guillot,**

      **Plaintiff,**

v.                                                               Case No. 09-2160-JWL

**City of Overland Park, Kansas,**

      **Defendant.**

## MEMORANDUM & ORDER

Plaintiff filed suit against his former employer, the City of Overland Park, Kansas, alleging that the City terminated his employment on the basis of his race and/or in retaliation for his engaging in protected activity. Plaintiff's claims are asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981 and 1983. In addition, plaintiff alleges that the City disciplined him on the basis of his race and/or in retaliation for engaging in protected activity in violation of 42 U.S.C. §§ 1981 and 1983. This matter is presently before the court on defendant's motion for summary judgment (doc. 40). As will be explained, the motion is denied.[1]

---

[1] In the pretrial order, plaintiff also alleges that he was subjected to disparate treatment on the basis of his race and/or in retaliation for plaintiff's complaints about racial discrimination in the workplace. Specifically, plaintiff alleges in the pretrial order that defendant refused to reimburse his travel expenses in December 2005 and subjected him to discipline (plaintiff's two suspensions are highlighted in the pretrial order) in violation of section 1981 and section 1983. Nonetheless, in its motion for summary judgment, the City states that the "only claim asserted by the plaintiff in this case is that he was wrongfully terminated" and the City's motion is limited to plaintiff's discharge claims. Plaintiff's disparate treatment claims, then, remain in the case. A careful reading of plaintiff's response, however, reflects plaintiff's intent to limit those claims to his disciplinary suspensions in that he does not suggest that any other action (*e.g.*, the refusal to reimburse him for travel

**I.     Facts**

The following facts are uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff Kirby Guillot, an African-American male, began his employment with the City of Overland Park, Kansas in June 2000 as a Street Maintenance Worker in the Street and Storm Sewer Maintenance Division of the Public Works Department. From 2000 through 2005, plaintiff's performance reviews were increasingly positive, progressing from "meets expectations" to "exceeds expectations" and, for the years 2002 through 2005, "performs well." At some point in 2005, Brian Hutchinson became plaintiff's immediate supervisor and he retained that position until the termination of plaintiff's employment in July 2007. In November 2005, Darryl Fourte, an African-American male, became the Manager of the Maintenance Division. Mr. Fourte, in turn, reported to Doug Brown, the Director of Public Works.

In December 2005, Mr. Hutchinson advised the employees under his supervision that, unlike his predecessor, he would not "host" a holiday luncheon, but would permit the employees to organize a holiday luncheon for which the employees would receive an early release from the work day with full compensation for the remainder of the work day. Plaintiff's work crew, which consisted of 4 employees (three African-American employees and one Caucasian employee) did not attend the holiday luncheon in December 2005 and they were the only crew

---

expenses or his performance reviews) rises to the level of an adverse employment action in the context of this case.

2

under Mr. Hutchinson's supervision that did not attend the luncheon. Plaintiff's crew worked a regular work day, with the usual 30-minute lunch break, on the day of the luncheon. These employees, then, did not receive the same benefit that Mr. Hutchinson's other employees received–an extended lunch period and early release with pay on the day of the luncheon. Mr. Hutchinson testified that the three African-American employees on plaintiff's crew were the only African-American employees under his supervision at the time.[2]

During the week between Christmas and New Year's Day, plaintiff complained to Mr. Hutchinson that it was unfair that he and his crew did not receive the benefit of an extended lunch and early release with pay and, during the course of the discussion, pointed out that three of the four affected employees were African-American employees–the only African-American employees under Mr. Hutchinson's supervision. In the absence of a satisfactory response from Mr. Hutchinson, plaintiff lodged the same complaint in early February 2006 to Mr. Fourte, including a comment about the racial composition of plaintiff's crew. On February 23, 2006, Mr. Fourte sent a e-mail message to Mr. Hutchinson seeking information on "events/incidents" that had occurred during the past year concerning plaintiff for purposes of a meeting that Mr. Fourte intended to have with Human Resources the following Monday concerning plaintiff's

---

[2]Inexplicably, the City contends that "nothing in the record" supports plaintiff's statement that the three African-American employees on plaintiff's crew were the only African-American employees under Mr. Hutchinson's supervision at the time. The City points to plaintiff's deposition and argues that plaintiff "refused" to answer the question whether there were other African-American employees under Mr. Hutchinson's supervision who did attend the luncheon. But plaintiff's statement is fully supported by the deposition testimony of Mr. Hutchinson himself and was appropriately referenced by plaintiff.

3

"performance record." Mr. Hutchinson did not recall ever receiving a similar request about any other employee under his supervision.

Within days of Mr. Fourte's request to Mr. Hutchinson, plaintiff's coworker Kyle Fleeman (a coworker who was not on plaintiff's regular crew) raised allegations about plaintiff to Mr. Hutchinson, including that plaintiff frequently referred to an African-American coworker named Tom Cummings as "Uncle Tom" and that he frequently called a white coworker "Little Mother Fucker" (who, admittedly, frequently called plaintiff "Big Mother Fucker). The City investigated Mr. Fleeman's allegations. In the meantime, plaintiff received his first negative performance review in which Mr. Hutchinson noted that plaintiff was not a "team player." In early May 2006, Director Brown issued a written reprimand to plaintiff concerning Mr. Fleeman's allegations. The reprimand imposed a two-day suspension without pay. In the reprimand, Director Brown expressly noted the "low morale in the work environment due to your negative attitude, specifically regarding your outward expressions of unequal treatment of employees in the workgroup by management." Director Brown also criticized plaintiff's "repetitive expressions" as "disruptive." Director Brown testified that these portions of the written reprimand referred, at least in part, to plaintiff's complaints of race discrimination.

During the summer of 2006, plaintiff continued to complain about the holiday luncheon and ultimately complained in writing to City Manager John Nachbar. In November 2006, the City's human resources personnel recommended to Director Brown that the timesheets for those employees who had worked additional hours in lieu of attending the December 2005 holiday luncheon be adjusted to reflect additional time worked and that the adjustment appear on the

4

employees' next regular paycheck. Director Brown waited one month, until December 18, 2006, before advising plaintiff and the other employees that they would receive additional compensation for the extended lunch and early release that they missed in connection with the December 2005 holiday luncheon.

On the following day, December 19, 2006, Director Brown issued plaintiff a one-day suspension without pay for an incident that occurred on October 20, 2006 between plaintiff and a third-party vendor in which plaintiff allegedly interrupted the vendor's demonstration of paving equipment to City employees by noting that the equipment was a "piece of shit" and that the City would never purchase such a "piece of shit." Shortly after receiving this suspension, plaintiff filed a charge of discrimination with the EEOC and, approximately two months later, received the worst performance review of his career.

In June 2007, plaintiff received the third "strike" against him, resulting in the termination of his employment. Specifically, on June 19, 2007, one of plaintiff's coworkers, Mandy Byers, sat down in the lunch room at the table where plaintiff was sitting and, shortly thereafter, moved to another table. While the parties dispute the nature of the ensuing exchange between plaintiff and Ms. Byers, plaintiff was apparently offended that Ms. Byers would move to another table and confronted her about it. Ms. Byers reported the confrontation to Mr. Hutchinson, an investigation followed, and the City ultimately terminated plaintiff's employment for violation of the City's policies against workplace violence, finding that plaintiff's conduct during the confrontation with Ms. Byers was threatening and intimidating. In addition, the City found that plaintiff, on prior occasions with Ms. Byers, had made comments that violated the City's policy

5

against sex discrimination, including comments suggesting that as a "girl" Ms. Byers did not deserve her job and had taken it away from a more qualified man.

Additional facts will be related, as necessary, in connection with the court's analysis of defendant's motion and plaintiff's particular claims.

**II.      Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an

6

essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**III.    Discussion**

In the pretrial order, plaintiff alleges that defendant terminated his employment on the basis of his race and/or in retaliation for plaintiff's complaints about racial discrimination in the workplace. Plaintiff's claims based on the termination of his employment are asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981 and 42 U.S.C. § 1983. The *McDonnell Douglas* framework applies to plaintiff's discharge claims regardless of whether the claim is asserted under Title VII, section 1981 or section 1983. *See Carney v. City & County of Denver*, 534 F.3d 1269, 1273, 1276 (10th Cir. 2008). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case

of discrimination or retaliation. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). If he establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the termination of plaintiff's employment. *See id.* If defendant meets this burden, summary judgment against plaintiff is warranted unless he shows that there is a genuine issue of fact as to whether defendant's reasons are pretextual. *See id.*; *Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005).

With respect to plaintiff's discharge claims asserted under section 1981 and section 1983, plaintiff must also establish that the City is liable for the alleged discriminatory and retaliatory acts of its City officials. To establish municipal liability, plaintiff must show that City officials were acting pursuant to a custom or policy of discriminatory or retaliatory employment practices or that the decision to terminate plaintiff's employment was made by City officials with final policymaking authority. *See Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010); *Carney*, 534 F.3d at 1273; *Randle v. City of Aurora*, 69 F.3d 441, 446-47 (10th Cir. 1995).

A.  *Prima Facie Case*

In its motion for summary judgment, the City contends that plaintiff can establish neither a prima facie case of discrimination nor a prima facie case of retaliation with respect to the termination of his employment. As will be explained, the court rejects each of the City's specific arguments concerning plaintiff's prima facie case. Because the City has not demonstrated the

absence of a genuine issue of fact with respect to any element of plaintiff's prima facie case of discrimination or retaliation, the City's motion for summary judgment on this issue is denied.

1.   Race

To establish a prima facie case of discriminatory discharge, plaintiff must show that he was a member of a protected class; he was qualified for his position; the City terminated his employment despite his qualifications; and the City terminated his employment under circumstances giving rise to an inference of unlawful discrimination. *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007). According to defendant, plaintiff cannot establish a prima facie case of discriminatory discharge because the circumstances surrounding plaintiff's termination do not give rise to an inference of discrimination. In support of this argument, the City simply relies on its asserted reasons for terminating plaintiff's employment and contends that, in the face of such legitimate reasons, plaintiff cannot show that the City terminated him on the basis of his race.

The City's argument, however, inappropriately places the proverbial "cart before the horse" and the Circuit has repeatedly cautioned that an employer's proffered reasons for its employment action is "irrelevant" at the prima facie stage. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1151-52 (10th Cir. 2005) (remanding case where district court inappropriately considered the employer's reasons for the employment action at the prima facie stage, thereby denying plaintiffs the opportunity to address pretext); *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000) (defendant cannot defeat prima facie case by articulating

9

reasons for the adverse employment action). The court, then, rejects defendant's argument that its articulated reasons for terminating plaintiff's employment are sufficient to preclude plaintiff from establishing an inference of unlawful discrimination.

Defendant's only other argument with respect to plaintiff's prima facie case is that plaintiff has failed to show any "overt racial intent or animus," a showing that the City maintains is required to establish a prima facie case of discriminatory discharge under section 1981 and section 1983. No such showing is required by plaintiff. Indeed, four of the five cases relied upon by defendant in support of its argument are section 1985(3) conspiracy cases–cases which clearly are inapposite to this case. *See, e.g., Money v. Great Bend Packing Co.*, 783 F. Supp. 563, 567 (D. Kan. 1992) (section 1985(3) requires proof of conspiracy, including proof of "a [race]-based, invidiously discriminatory animus").

The only other case relied upon by defendant, *Randolph v. Board of Public Utilities of Kansas City, Kansas*, 983 F. Supp. 1008 (D. Kan. 1997), does not state or otherwise suggest that a plaintiff is required to make a particularized showing of racial animus in proving a racial discrimination claim under section 1981 or section 1983. Rather, the court in *Randolph* appropriately recognized that a plaintiff alleging racial discrimination could prove such discrimination through circumstantial evidence and use of the *McDonnell Douglas* framework. In short, plaintiff's section 1981 and section 1983 discriminatory discharge claims do not require a heightened showing of racial animus for purposes of establishing a prima facie case. *See Carney*, 534 F.3d at 1273 ("In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII."). Defendant's

argument, then, is rejected.

2. Retaliation

To establish a prima facie case of retaliation, plaintiff must establish that he engaged in protected opposition to discrimination; he suffered an adverse action that a reasonable employee would have found material; and a causal connection exists between the protected activity and the materially adverse action. *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1215 (10th Cir. 2010).[3] As it did in connection with plaintiff's discriminatory discharge claim, the City contends that plaintiff cannot establish a prima facie case of retaliatory discharge because plaintiff cannot show the requisite "causal connection" in the face of defendant's articulated reasons for terminating plaintiff's employment.[4] Again, the court will not require plaintiff, as part of his prima facie case, to disprove the City's proffered reasons for terminating his employment. In the absence of any other argument from the City concerning plaintiff's prima

---

[3]Because the issue is one that does not require resolution here, the court assumes without deciding that the standard for Title VII retaliation claims articulated by the Supreme Court in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006) applies to section 1981 and section 1983 retaliation claims as well. *See Weaks v. Roadway Exp., Inc.*, 259 Fed. Appx. 75, 77 (10th Cir. 2007) (applying standard to section 1981 retaliation claim).

[4]In its reply brief, defendant contends that plaintiff also cannot establish the requisite "causal connection" because the temporal proximity between plaintiff's protected activity and his termination is too remote. Because that issue was raised for the first time in defendant's reply, the court declines to address it. *See Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (argument raised for the first time in reply brief is waived) (citing *Coleman v. B-G Maintenance Management*, 108 F.3d 1199, 1205 (10th Cir. 1997) (issues not raised in the opening brief are deemed abandoned or waived)).

facie case,[5] the City has not shown that it is entitled to summary judgment on the grounds that plaintiff has failed to establish the requisite prima facie case.

B.     *Pretext Analysis*

The court now analyzes whether defendant has met its burden to articulate a legitimate, non-discriminatory or non-retaliatory reason for plaintiff's discharge and, if so, whether plaintiff has come forward with evidence from which a reasonable jury could conclude that those reasons are pretextual. Defendant contends that it terminated plaintiff's employment based on plaintiff's "serious and multiple violations of the City's policies" and plaintiff's continued inappropriate conduct after receiving warnings that such conduct could result in his termination. Plaintiff concedes that defendant has met its burden of production and, thus, the burden shifts back to plaintiff to demonstrate that defendant's proffered reasons are pretextual. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

To show that an employer's proffered non-discriminatory or non-retaliatory reason for an employment action is pretextual, "a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory

---

[5]Inexplicably, the City contends that plaintiff's section 1981 and section 1983 retaliatory discharge claims also require a showing that the City acted with a "racially discriminatory animus." To succeed on his retaliation claim, of course, plaintiff need not prove that defendant was motivated by plaintiff's race in any respect. Defendant does not, in its motion for summary judgment, raise any other challenge to plaintiff's prima facie case.

reasons." *Id.* at 1183 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006)). As explained below, the court concludes that plaintiff has satisfied his burden with respect to both his race discrimination claim and his retaliation claim and denies defendant's motion for summary judgment.

In an effort to establish pretext with respect to his claim that defendant terminated his employment based on his race, plaintiff has come forward with evidence suggesting that the City declined to terminate the employment of Caucasian employees who had confrontations with coworkers and were found to have violated the City's policy against workplace violence and instead permitted these employees to participate in anger management counseling in lieu of termination. Plaintiff, then, is attempting to prove pretext by demonstrating that defendant treated him "differently from similarly situated employees who violated work rules of comparable seriousness in order to show that the employer failed to follow typical company practice in its treatment" of plaintiff. *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1167-68 (10th Cir. 2007). Specifically, plaintiff submits evidence that in November 2006 a Caucasian employee in the maintenance department was sent to anger management counseling by Director Brown in lieu of termination after the employee told an African-American coworker to "Keep your black ass out of my conversation," and "I'll kick your black ass." In June 2007, another Caucasian employee in the public works department was found to have violated the City's workplace violence policy and received a letter of reprimand and was sent to anger management counseling in lieu of termination. Director Brown testified that he did not consider permitting plaintiff to participate in anger management counseling in lieu of termination.

13

Defendant does not controvert the evidence submitted by plaintiff. Rather, defendant contends that the employees highlighted by plaintiff are not similarly situated to plaintiff because there is no evidence in the record concerning the employees' prior disciplinary records. To establish pretext through differential treatment, however, plaintiff must show only that other employees "violated work rules of comparable seriousness" (all employees here violated the City's policy against workplace violence) and that those employees dealt with the same supervisor and were subject to the same standards governing discipline–all employees were ultimately supervised by Director Brown. *Id.* at 1171 n.11. Plaintiff, then, has made the requisite showing for purposes of summary judgment. While defendant contends that the employees are not similarly situated to plaintiff because they had dissimilar disciplinary histories, defendant is, in fact, arguing that any discrepancy in treatment between plaintiff and these employees is explained by a nondiscriminatory reason–plaintiff's disciplinary history. *See id.* at 1171-72. Defendant, of course, is free to present this evidence to the jury and the jury may reasonably conclude that any discrepancy in treatment is justified. But the court, on this record, cannot conclude that defendant treated plaintiff differently than other employees because of his disciplinary history. In short, plaintiff has satisfied his pretext burden with respect to his claim that defendant terminated his employment on the basis of his race.

The court also finds that plaintiff has satisfied his pretext burden with respect to his claim that defendant terminated his employment in retaliation for plaintiff's complaints that African-American employees in the maintenance department were treated less favorably than other employees in connection with the holiday luncheon. While the City urges that plaintiff's

14

termination occurred more than 18 months after his complaint about the luncheon, the evidence viewed in the light most favorable to plaintiff reveals that a pattern of retaliatory conduct began soon after plaintiff complained about the holiday luncheon and later culminated in plaintiff's discharge. *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (finding a pattern where defendant began citing plaintiff for job deficiencies within one month of plaintiff's reporting of violation and continued for three months culminating in a demotion eleven months later).; *see also Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007) (applying this principle from *Marx*).

According to plaintiff's evidence, plaintiff complained to Mr. Fourte in early February 2006 that he believed that African-American employees were treated less favorably than other employees in connection with the holiday luncheon.[6] Less than one month later, on February 23, 2006, Mr. Fourte e-mailed plaintiff's supervisor, Mr. Hutchinson, specifically seeking a "history" of all "events/incidents" involving plaintiff. Mr. Fourte's e-mail reveals that he and Human Resources personnel intended to use that information (information that he needed by the next day's close of business) in connection with a meeting concerning plaintiff's "performance

---

[6]The City controverts this fact only by complaining that the fact comes from plaintiff's "self-serving" declaration that was created "after plaintiff's deposition, after the close of discovery and after the City filed its motion for summary judgment." The City's argument reflects a fundamental misunderstanding of summary judgment practice. Simply because plaintiff's declaration contains uncorroborated statements of fact which are favorable to plaintiff does not render the declaration incompetent under Rule 56. The test is whether the declaration relates specific, personalized facts within the declarer's knowledge. Plaintiff's declaration satisfies this burden. Moreover, the mere fact that plaintiff's declaration was drafted after the filing of the City's motion does not render the declaration incompetent in the absence of any suggestion that the declaration is inconsistent with plaintiff's earlier deposition or that it otherwise constitutes a "sham" declaration.

15

record." Mr. Hutchinson testified that he could not recall ever having received a similar request with respect to any other employee and the evidence reflects no catalyst for the request other than plaintiff's complaint about the holiday luncheon. A jury, then, could reasonably infer that Mr. Fourte was engaged in a campaign to gather negative information about plaintiff in light of his complaints–an inference the City disputes only by highlighting that Mr. Fourte, like plaintiff, is African-American and by asserting that plaintiff has not shown that Mr. Fourte had any "reason" to seek information about any other employee such that the fact that he did not make similar requests about anyone else is not relevant. Of course, the fact that Mr. Fourte is African-American has no bearing whatsoever in the context of a retaliation claim. And the City's suggestion that Mr. Fourte had no reason to seek information concerning other employees only serves to underscore the possibility that the "reason" he sought information about plaintiff was the fact that plaintiff had made a complaint of racial discrimination.

Within days of Mr. Fourte's request to Mr. Hutchinson, plaintiff's coworker Mr. Fleeman raised allegations about plaintiff to Mr. Hutchinson, including that plaintiff frequently referred to an African-American coworker named Tom Cummings as "Uncle Tom" and that he frequently called a white coworker "Little Mother Fucker" (who, admittedly, frequently called plaintiff "Big Mother Fucker). While it is unclear from the record whether Mr. Fleeman came forward in direct response to any "feelers" put out by Mssrs. Fourte and Hutchinson, such an inference is at least permissible in light of the fact that the allegations made by Mr. Fleeman concerned conduct of an ongoing nature (but, for some reason–perhaps because he was encouraged to come forward with information about plaintiff–decided to report on February 27,

16

2006) as opposed to an incident occurring contemporaneously with his report.

In any event, the pattern of allegedly retaliatory conduct continued through the City's investigation of Mr. Fleeman's allegations (during which time plaintiff received his first negative performance review in which Mr. Hutchinson noted that plaintiff was not a "team player") and Director Brown's May 9, 2006 written reprimand of plaintiff. That reprimand, which imposed a two-day suspension without pay, expressly noted the "low morale in the work environment due to your negative attitude, specifically regarding your outward expressions of unequal treatment of employees in the workgroup by management." Director Brown criticized plaintiff's "repetitive expressions" as "disruptive." Director Brown testified that these portions of the written reprimand referred, at least in part, to plaintiff's complaints of race discrimination. Significantly, this written reprimand–which expressly mentions plaintiff's complaints–marked plaintiff's first "strike" in the progressive discipline that ultimately led to plaintiff's discharge.

During the summer of 2006, plaintiff continued to complain about the holiday luncheon and ultimately complained in writing to City Manager John Nachbar. In November 2006, the City's human resources personnel recommended to Director Brown that all of the employees who had worked additional hours in lieu of attending the December 2005 holiday luncheon be paid additional compensation for the extended lunch and early release that they had missed. Director Brown waited one month, until December 18, 2006, before advising plaintiff and the other employees that they would receive such compensation. The very next day, on December 19, 2006, Director Brown issued plaintiff a one-day suspension without pay for the incident concerning plaintiff's comments to a third-party vendor–an event that occurred two months

17

earlier. A reasonable jury could reasonably infer from the unexplained delay in issuing the suspension, coupled with the issuance of that suspension the day after Director Brown was again confronted with plaintiff's dispute concerning the holiday luncheon, that the City was continuing its efforts to advance plaintiff through the progressive discipline process with the intent to terminate plaintiff's employment. Shortly after receiving this suspension, plaintiff filed a charge of discrimination with the EEOC and, approximately two months later, received the worst performance review of his career. In June 2007, plaintiff received the third "strike" against him for the lunch room incident with Ms. Byers.

For the foregoing reasons, the court concludes that sufficient evidence exists in the record from which a reasonable jury could conclude that the City terminated plaintiff's employment in retaliation for plaintiff's complaints of discrimination. This is particularly true as plaintiff's termination was based, at least in part, on plaintiff's two prior suspensions–one of which expressly criticized plaintiff for raising concerns of disparate treatment in the workplace. Summary judgment is denied.

*C.     Municipal Liability*

With respect to plaintiff's section 1981 and section 1983 claims, defendant contends in its motion that summary judgment is also appropriate because plaintiff cannot prove that the City acted pursuant to a custom or policy of discriminatory or retaliatory practices. The City's motion, however, focuses exclusively on plaintiff's lack of evidence demonstrating a "custom" of such practices. By way of example, the City makes much of the fact that plaintiff has no

18

evidence that similarly situated individuals were treated similarly by the City such that racial discrimination or retaliation might be deemed "continuing, persistent and widespread." In response, plaintiff concedes that the summary judgment record does not establish a "custom" of discriminatory or retaliatory practices on the part of the City, but contends that municipal liability in this case is nonetheless appropriate because Mr. Brown, the Director of the Department of Public Works and the individual who made the decision to terminate plaintiff's employment, is a final policymaker with respect to such matters or, at the very least, that City officials with final policymaking authority delegated such authority to Director Brown and then ratified his decision and the basis for it. In its reply, the City challenges plaintiff's argument that Director Brown is a final policymaker but does not address plaintiff's suggestion that Director Brown was delegated authority to make the decision that he did by final policymakers. For these reasons, the record is not sufficiently developed for the court to conclude at this juncture whether the City may be held liable for plaintiff's section 1981 and 1983 claims. The court will not resolve this issue unless and until a Rule 50 motion is made at the close of plaintiff's evidence at trial.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 40) is **denied**.

**IT IS SO ORDERED.**

Dated this 28th day of July, 2010, at Kansas City, Kansas.

                                                          <u>s/ John W. Lungstrum</u>
                                                          John W. Lungstrum
                                                          United States District Judge